IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CARPENTERS HEALTH & WELFARE  :
FUND OF PHILADELPHIA & VICINITY, :
et al.,                      :      CIVIL ACTION
                             :      NO. 09-587
            v.               :
                             :
SILICA BUILDERS & CONSTR. MGMT., :
LLC, d/b/a SILICA BUILDERS   :

**October 6, 2009**                                                        **Anita B. Brody, J.**

### MEMORANDUM

**I. INTRODUCTION**

Plaintiffs in this case fall into three main categories:

1) "The Union": the Metropolitan Regional Council of Carpenters, Southeastern Pennsylvania, State of Delaware and Eastern Shore of Maryland, United Brotherhood of Carpenters and Joiners of America.

2) "The Trust Funds": the Carpenters Health and Welfare Fund of Philadelphia and Vicinity; the Carpenters Pension and Annuity Fund of Philadelphia and Vicinity; the Carpenters Savings Fund of Philadelphia and Vicinity; the Carpenters Joint Apprentice Committee;[1] and the National Apprenticeship and Health and Safety Fund (respectively, "Welfare Fund," "Pension Fund," "Savings Fund," "Apprentice Committee," and "NAHS"). Plaintiff Edward Coryell is a trustee and fiduciary of several of these Funds.

---

[1] The Carpenters Joint Apprentice Committee is the trustee and fiduciary of the Carpenters Joint Apprenticeship and Training Fund of Philadelphia and Vicinity. *See* Carpenters Joint Apprenticeship and Training Fund of Philadelphia and Vicinity–Agreement and Declaration of Trust.

-1-

3) "The non-Trust Funds":  the Carpenters Political Action Committee ("PAC"), and the Building Industry Association of Philadelphia, Pennsylvania ("BIA"), a multiemployer organization, as well as its officer, William Reddish, as holder of an Industry Advancement Program Fund ("IAP").[2]

All plaintiffs are either a party to or a beneficiary of a collective bargaining agreement ("Labor Contract") between the Union and the BIA.  Defendant Silica Builders and Construction Management LLC ("Silica") is a construction management company that hires contractors and subcontractors, including carpenters, to work on construction projects.

Plaintiffs jointly bring this action against Silica pursuant to § 502 and § 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132, 1145; § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a); and their rights under the Labor Contract.  Each Plaintiff seeks an audit of Silica's financial records (Count I), and to collect any delinquent contributions revealed by the audit, as well as liquidated damages, interest, and attorneys' fees and costs incurred by Plaintiffs and owed to them under the Labor Contract (Count II).  The Trust Funds also seek damages owed to them under ERISA (Count III).

Silica moves to dismiss the Complaint, arguing that Plaintiffs' must first submit their claims to arbitration before a court may entertain them.  Silica is incorrect because the Labor

---

[2] The Complaint identifies four categories of plaintiffs that are owed contribution under the Labor Contract: "the Funds, PAC, IAP and Union." (Compl. ¶14.)  Yet, unlike the other three entities, the "IAP" is never identified in the Complaint.  However, the Complaint does reference the "Industry Advancement Fund," which is allegedly due contribution under the Labor Contract. (*Id*. ¶6.)  I give Plaintiffs the benefit of the doubt and assume that the IAP identified in the Complaint refers to the Industry Advancement Fund.  Because Article 16 of the Labor Contract identifies the Industry Advancement Program as a fund to which Silica must contribute, Silica will not be prejudiced by my assuming that the Industry Advancement Fund and the "IAP" are one and the same.

Contract contains an express provision that excludes delinquency disputes from mandatory submission to arbitration. Consequently, I deny Silica's motion to dismiss.

## II. JURISDICTION AND LEGAL STANDARD

This Court has subject matter jurisdiction under 28 U.S.C. § 1331. In deciding a motion to dismiss under FED. R. CIV. P. 12(b)(6), a court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff."[3] *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002). A motion to dismiss should be granted if the moving party has established that the plaintiff would not be entitled to relief under any reasonable reading of the complaint. *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 452 (3d Cir. 2006).

## III. FACTUAL BACKGROUND

On December 19, 2006, Silica agreed to be bound by the provisions of the Labor Contract between the Union and the BIA. In doing so, Silica agreed to certain contributory and withholding obligations set forth within the Labor Contract.[4] Plaintiffs allege that Silica has failed to make contributions to the Funds as required by the Labor Contract. Plaintiffs further allege that they cannot know "the precise nature, extent and amount of [Silica's] delinquency

---

[3] A court deciding a 12(b)(6) motion generally may not consider materials extraneous to the complaint, but a "'document integral to or explicitly relied upon in the complaint' may be considered." *In re* Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). Because the Labor Contract is integral to the Complaint, I will consider it here, despite the fact that it was not attached to the Complaint.

[4] Silica's contributory and withholding obligations are established in Article 5 (Joint Apprentice Committee), Article 16 (Health and Welfare Fund-Industry Advancement Program), Article 17 (Pension and Annuity Fund), Article 18 (Work Dues and Jobs Recovery Dues Checkoffs), Article 19 (Delinquency and Collection Procedure), Article 20 (Savings Fund), Article 22 (Political Action Committee), and Article 26 (National Apprenticeship and Health and Safety Fund) (Education and Development Fund) of the Labor Contract.

[because] the books, records and information necessary to determine this liability are in the exclusive possession, custody and control or knowledge of [Silica]." (Compl. ¶16.) Plaintiffs also claim that Silica "has purposefully and intentionally denied the Funds and Union access to records needed by their auditors to determine the full extent of the delinquency." (*Id*. ¶17.)

## IV. DISCUSSION

This dispute concerns whether Plaintiffs may pursue their rights to audit Silica's financial records and seek contributions under Article 19 ("Delinquency and Collection Procedure") of the Labor Contract in district court or must submit to arbitration. Silica contends that a straightforward reading of the Labor Contract compels the conclusion that Plaintiffs must first submit their grievances to arbitration. It argues that the Contract's general arbitration clause, Article 14, plainly governs "any dispute [that] arise[s] as to the interpretations, application or claimed violation of any provision of th[e] Agreement." Labor Contract, Art. 14, *infra* Part IV.B. Plaintiffs respond that each of them is exempt from arbitration because of an exception clause in Article 21, the "No Strike - No Lockout" provision of the Labor Contract. Plaintiffs argue that the exception effectively nullifies Article 14's applicability to Article 19 delinquency and collection disputes.

After establishing the legal framework governing disputes between a union and an employer bound together by a labor contract, I will examine in detail the provisions of the Labor Contract at issue in this case and explain where in the Contract I find express language exempting the Union's grievances from arbitration. The same language that exempts the Union from arbitration also exempts the other plaintiffs (i.e., "the Funds"), none of whom have a higher burden than the Union to prove that they are exempt from arbitration. Consequently, I will be

brief in examining the Funds' rights to pursue their claims before me.

## A. Legal Framework

In a series of opinions known as the *Steelworkers Trilogy*,[5] the Supreme Court set forth a framework for courts to employ when examining disputes between a union and an employer. "The first principle gleaned from the *Trilogy* is that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). The second principle of the *Trilogy* is that "the question of arbitrability–whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance–is undeniably an issue for judicial determination." *Id*. at 649. The third principle "is that, in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *Id*.

Finally, in those labor disputes governed by a collective bargaining agreement that contains an arbitration clause, there is a presumption of arbitrability such that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960). This presumption of arbitrability is difficult to overcome, but it can be surmounted by "an[] express provision excluding a particular grievance

---

[5] *Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); and *Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593 (1960).

from arbitration." *Id.* at 584-85; *see also Graphic Commc'ns. Int'l Union v. N. Am. Directory Corp.*, 98 F.3d 97, 103 (3d Cir. 1996) (finding a dispute regarding medical benefit changes expressly excluded from arbitration); *Affiliated Food Distribs., Inc. v. Local Union No. 229*, 483 F.2d 418, 420-21 (3d Cir. 1973) (concluding that the grievance process created by a general arbitration clause was not appropriate for employer's claim against union for breach of a no-strike clause).

## B.  Interpretation of the Labor Contract

The three clauses of the Labor Contract at issue in this case are the general arbitration clause, Article 14 ("Grievance - Arbitration Clause"); the "No Strike - No Lockout" clause, Article 21; and the "Delinquency and Collection Procedure" clause, Article 19.  Article 14, the general arbitration clause, reads, in pertinent part:

> Should any dispute arise as to the interpretations, application or claimed violation of any provision of this Agreement, the dispute shall be settled in the following manner:
>
> (a) The Employer's designated representative and the Council's Business Representative shall meet to discuss the dispute and attempt to render a decision within twenty-four (24) hours from the time the dispute is brought to the other party's attention.
>
> (b) If no agreement is reached in step (a), the Council's Executive Secretary-Treasurer and the B.I.A.'s Executive Vice President or their designated representative(s) shall make every effort to meet within 24 hours (exclusive of Saturdays, Sundays and Holidays) in an effort to resolve the dispute.
>
> (c) If the dispute is not resolved in steps (a) and/or (b) the matter shall promptly be referred to arbitration. . . .
>
> (d) The final decision of the impartial arbitrator shall be final and binding on all parties.

Article 21, the "No Strike - No Lockout" clause, is a more particularized provision.  In it,

the Union agrees not to strike and the employer agrees not to engage in a lockout. Should a dispute arise between the parties, Article 21 states:

> [T]hey shall meet and make every effort to resolve the dispute on a mutually agreeable basis, and if unable to do so, they may by mutual consent, submit the dispute to an Arbitrator, whose decision shall be final and binding upon both parties (*except as set forth by Article 19–Delinquency and Collection Procedure*).

(emphasis added) (italicized language hereinafter referred to as the "Article 21 Exception"). This grievance procedure is slightly different from the general grievance procedure established in Article 14. For example, under Article 21, if the parties fail to resolve a dispute privately, the parties may submit the dispute to an arbitrator, but only by mutual consent. In contrast, under Article 14, if the Union and an employer cannot resolve a dispute through private discussion, the dispute is automatically referred to arbitration, regardless of the parties' consent. Article 21 is meant to provide a grievance procedure separate from the general grievance procedure established in Article 14 only in the event that a dispute threatens to lead to a strike or lockout.

Just as Article 21 creates a separate grievance procedure for strikes and lockouts, Article 19, the "Delinquency and Collection Procedure" clause, carves out a separate grievance process for delinquency and collection disputes. Article 19 mandates the process by which employers must make contributions to the various funds incorporated by the Labor Contract, and authorizes two grievance actions in the event of an employer's delinquency: 1) the withholding of employees (i.e., a strike), and 2) the institution of formal collection proceedings. These two actions are provided for in § 6 of Article 19:

> In addition to the liquidated damages charge provided for [in the preceding sections], the alleged failure of the Employer to make payments when due or payment received later than five (5) days after the due date shall subject the Employer to one or more of the following actions:

> (A) The [Union] shall have the right to withhold employees covered by this Agreement until all sums due (including liquidated damages) are paid. If such action shall, in the discretion of the [Union], prove necessary or desirable, the employees whose labor is thus withheld, shall be paid their wages and fringe benefits for all time lost pending payments by the employer.
>
> (B) The appropriate Funds and/or [Union] may institute formal collection proceedings that may include, but are not limited to the institution of legal action against the Employer, to secure, and if necessary, to compel payment of the monies described herein. In the event that an Employer is delinquent in the payment of contributions, the Employer shall pay (in addition to the principal sums due and the ten percent (10%) liquidated damages) interest calculated in accordance with ERISA, all costs of suit (including reimbursement for Fund administrative time) and attorneys' fees and costs, regardless of whether suit or other formal proceedings are instituted.

As is evident, Article 19, § 6(A), permits the Union to strike in protest of an employer's delinquency. The Article 21 Exception exempts the Union from the special strike grievance procedure established in Article 21 only in the case of a strike permitted by Article 19. Read in conjunction with § 6(A), the Article 21 Exception permits the Union "to withhold employees covered by this Agreement until all sums due . . . are paid," without having to submit to the special strike grievance procedure of Article 21.

In addition to, or in lieu of withholding employees, Article 19, § 6(B), offers a separate remedy in the event of an employer's delinquency: the Union and the Funds can both institute formal collection proceedings, which may include the institution of legal action, without resorting to a strike. The Article 21 Exception does not apply to § 6(B) of Article 19 because the institution of formal collection proceedings is unrelated to the threat of a strike.

Plaintiffs' argument is that in the case of a delinquency dispute, regardless of which remedy the Union seeks to pursue, the Article 21 Exception not only exempts the parties from the special grievance procedures established in Article 21 for strikes and lockouts, but also exempts the parties from the general grievance procedures of Article 14. Such an interpretation of the

Labor Contract is unnecessary.  Plaintiffs have no need to search in Article 21 for an express exemption from Article 14 because Article 19, § 6(B), itself contains express language exempting both the Union and the Funds from arbitration.  Section 6(B) clearly states that both the Union and the appropriate Funds "may institute formal collection proceedings that may include . . . the institution of legal action."  Section 6(B) also says that an employer found to be delinquent must pay "all costs of suit."  "Suit" is defined by BLACK'S LAW DICTIONARY (8th ed. 2004) as "any proceeding by a party or parties against another in a court of law."

If the parties to the Labor Contract intended to submit all delinquency disputes to arbitration, they would not have included a provision that expressly allows for the Union and the Funds to file a lawsuit to collect their debt.  "[K]eep[ing] in mind that specific provisions ordinarily control more general provisions," *Great Am. Ins. Co. v. Norwin Sch. Dist.*, 544 F.3d 229, 247 (3d Cir. 2008), it may be said with positive assurance that the Labor Contract is not susceptible of an interpretation by which Article 14's general arbitration language trumps Article 19's specific language.  *See Affiliated Food Distribs., Inc.*, 483 F.2d at 420-21.  Therefore, because Article 19, § 6(B), expressly allows for the Union to institute formal collection proceedings, such as a lawsuit, without having to submit to arbitration, I deny Silica's motion to dismiss as to the Union.

**C.  Arbitrability of Dispute between the Funds and Silica**

Neither the Trust Funds nor the non-Trust Funds have a greater burden than the Union to prove that their claims may proceed in district court and both types of Funds are equally exempted from arbitration by Article 19, § 6(B).  The Trust Funds, in fact, have a lower burden than the Union to prove that they are exempt from arbitration because in a delinquency and

collection dispute between trustees of employee benefit funds and an employer, there is no presumption of arbitrability.  *See Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 372 (1984) (concluding that no presumption of arbitrability applies because the trustees "have no recourse to . . . the economic weapons of strikes and lockouts").  As for the dispute between the non-Trust Funds and Silica, I need not address whether the presumption of arbitrability applies because the answer would not change my ultimate decision.  Even if the presumption of arbitrability did apply to the non-Trust Funds, the express language in Article 19, § 6(B), would exempt them from arbitration just as it exempts the Union.  Because the Funds have no greater burden than the Union to show that they are exempt from arbitration and because they are, in fact, exempted by Article 19, § 6(B), I deny Silica's motion to dismiss the Funds.

V. CONCLUSION

In sum, Silica's motion to dismiss Plaintiffs' Complaint is denied.  Plaintiffs may continue forward with their litigation before me.  An appropriate order shall follow.

s/Anita B. Brody
_____
ANITA B. BRODY, J.